# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| YVETTE GRIFFIN, individually and on behalf of others similarly situated, | : | CIVIL ACTION FILE NO. 1:19-cv-05561-AT |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **CLASS ACTION** |
| CHW GROUP, INC. d/b/a CHOICE HOME WARRANTY, | : | |
| Defendant. | : | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................ 1

I.     BACKGROUND AND FACTS ............................................................ 3

II.    ARGUMENT ....................................................................................... 4

    A.     The Plaintiff Plainly Alleges She Was Contacted Directly by
         Choice Home Warranty. ..................................................... 4

    B.     Plaintiff Sufficiently Plead Facts Supporting the Conclusion that
         Defendant's Calls Were Made with a Pre-Recorded Voice and/or
         an ATDS. ........................................................................... 6

    C.     The Plaintiff has Article III Standing to Pursue the Unwanted Pre-
         Recorded Call to her Cell Phone, as the Eleventh Circuit and this
         Court has Previously Held. ................................................. 9

    D.     The Defendant has Failed to meet the Standard on its Pre-
         Discovery Motion to Strike Class Allegations................... 13

III.   CONCLUSION .................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abante Rooter & Plumbing, Inc. v. Birch Communs., Inc.*,
  No. 1:15-cv-3562-AT, 2016 U.S. Dist. LEXIS 8526 (N.D. Ga. Jan.
  7, 2016)..................................................................................................13

*Augustin v. Santander Consumer USA, Inc.*,
  43 F. Supp. 3d 1251 (M.D. Fla. 2012) ................................................5

*Boyer v. Diversified Consultants, Inc.*,
  306 F.R.D. 536 (E.D. Mich. Apr. 20, 2015) .....................................16

*Braver v. Northstar Alarm Servs., LLC*,
  329 F.R.D. 320 (W.D. Okla. Oct. 15, 2018) ......................................18

*Bryant v. Food Lion, Inc.*,
  774 F. Supp. 1484 (D.S.C. 1991) .......................................................13

*Burke v. Credit One Bank, N.A.*,
  No. 8:18-cv-00728, 2019 U.S. Dist. LEXIS 62770 (M.D. Fla. Feb.
  5, 2019)................................................................................................15

*Chapman v. Wagener Equities, Inc.*,
  No. 09-c-07299, 2014 WL 540250 (N.D. Ill. 2014) ..........................19

*Childress v. Liberty Mut. Ins. Co.*,
  No. 1:17-cv-01051, 2018 WL 4684209 (D.N.M. Sept. 28, 2018) .......5

*Cordoba v. DIRECTV, LLC*,
  942 F.3d 1259 (11th Cir. 2019)..........................................................12

*Daniel v. Navient Solutions, LLC*,
  328 F. Supp. 3d 1319 (M.D. Fla. 2018) .............................................15

*Etzel v. Hooters of Am.*,
  LLC, 223 F. Supp. 3d 1306 (N.D. Ga. Nov. 15, 2016).......................15

*Giordano v. Davison Design & Dev., Inc.*,
  No. 0:13-cv-60248, 2013 U.S. Dist. LEXIS 203099 (S.D. Fla. July
  18, 2013)..............................................................................................15

*Golan v. FreeEats.com, Inc.*,
    930 F.3d 950 (8th Cir. 2019) ...............................................................11

*Hamza v. Dunhams Athleisure Corp.*,
    No. 2:16-cv-11641, 2017 U.S. Dist. LEXIS 41074 (E.D. Mich.
    Mar. 22, 2017) ....................................................................................11

*Herrera v. JFK Med. Ctr., Ltd. P'ship*,
    648 F. App'x 930 (11th Cir. 2016) ......................................................14

*Hinman v. M & M Rental Ctr.*,
    545 F. Supp. 2d 802 (N.D. Ill. Apr. 7, 2008) .....................................18

*IMHOFF Inv., L.L.C. v. Alfoccino, Inc.*,
    792 F.3d 627 (6th Cir. 2015) ...............................................................10

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
    728 F.3d 682 (7th Cir. 2013) ...............................................................18

*Johansen v. Vivant, Inc.*,
    No. 12 C 7159, 2012 U.S. Dist. LEXIS 178558 (N.D. Ill. Dec. 18,
    2012) ......................................................................................................8

*Keim v. ADF Midatlantic, LLC*,
    No. 12-80577-CIV, 2015 U.S. Dist. LEXIS 159070 (S.D. Fla. Nov.
    9, 2015) ..................................................................................................7

*Leyse v. Lifetime Entm't Servs.*,
    LLC, 679 Fed. Appx. 44 (2nd Cir. 2017) ............................................11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 ......................................................................................9, 10

*McCurley v. Royal Seas Cruises, Inc.*,
    331 F.R.D. 142 (S.D. Cal. March 27, 2019) .......................................18

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ...............................................................16

*Mills v. Foremost Ins. Co.*,
    511 F.3d 1300 (11th Cir. 2008) ...........................................................14

*Mims v. Arrow Fin. Servs., LLC*,
    132 S. Ct. 740 (2012) ........................................................................1, 3

*Naiman v. Freedom Forever, LLC*,
  2019 WL 1790471 (N.D. Cal. Apr. 24, 2019).......................................................5

*Parchman v. SLM Corp.*,
  896 F.3d 728 (6th Cir. 2018)...........................................................................11

*Prado-Steiman v. Bush*,
  221 F.3d 1266 (11th Cir. 2000).......................................................................16

*Romano v. Motorola, Inc.*,
  2007 U.S. Dist. LEXIS 86472 (S.D. Fla. November 26, 2007) ........................13

*Scott v. 360 Mortg. Grp., LLC*,
  No. 17-cv-61055, 2017 U.S. Dist. LEXIS 207513 (S.D. Fla. Dec.
  14, 2017)..........................................................................................................7, 9

*Smith v. Royal Bahamas Cruise Line*,
  No. 14-cv-03462, 2016 U.S. Dist. LEXIS 6204 (N.D. Ill. Jan. 20,
  2016).....................................................................................................................7

*Soular v. Northern Tier Energy LP*,
  2015 U.S. Dist. LEXIS 112294 (D. Minn. August 25, 2015) ...........................16

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ................................................................................9, 10

*Susinno v. Work Out World Inc.*,
  862 F.3d 346 (3d Cir. 2017)........................................................................11, 12

*United States v. Students Challenging Regulatory Agency Procedures
  (SCRAP)*,
  412 U.S. 669 (1973) ........................................................................................10

*Van Patten v. Vertical Fitness Group, LLC*,
  847 F.3d 1037 (9th Cir. 2017)........................................................................11

*Wijesinha v. S. Fla. MGS, LLC*,
  387 F. Supp. 3d 1412 (S.D. Fla. June 4, 2019) ...............................................15

*Wright v. EXP Realty, LLC*,
  No. 6:18-cv-1851-Orl-40TBS, 2019 U.S. Dist. LEXIS 99003
  (M.D. Fla. June 13, 2019) ...............................................................................17

*Zeidel v. Nat'l Gas & Elec., Ltd. Liab. Co.*,
No. 18 CV 06792, 2019 U.S. Dist. LEXIS 83988 (N.D. Ill. May
17, 2019)..............................................................................................7

## Statutes

47 U.S.C. § 227 .................................................................*passim*

47 U.S.C. § 227(b)(1)(A) ...........................................................6

47 U.S.C. § 227 (b)(1)(A)(iii) .................................................4

## Rules

Fed. R. Civ. P. 23 ..................................................................15

Fed. R. Civ. P. 23(c)(1) .........................................................16

## Other Authorities

Herb Weisbaum, *It's Not Just You—Americans Received 30 Billion
Robocalls Last Year*, NBC News (Jan. 17, 2018) ................................3

WebRecon, *WebRecon Stats for Dec 2017 & Year in Review* ..................3

## INTRODUCTION

The Court should deny Defendant CHW Group, Inc. d/b/a Choice Home Warranty's ("Choice Home Warranty") motion to dismiss because the Plaintiff Yvette Griffin ("Plaintiff") states a claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). The Plaintiff's claim is viable because she has alleged a plausible inference that it was made with a pre-recorded voice as well as an "Automatic Telephone Dialing System" ("ATDS"), as that term is defined by the TCPA.

First, Plaintiff sufficiently alleges that she was contacted directly by Choice Home Warranty. Among other allegations, the Plaintiff specifically states that "CHW Group called Ms. Griffin on her cellular telephone with a pre-recorded message on October 25, 2019"[1], as well as the fact that the Plaintiff received an e-mail from Choice Home Warranty following up on their call.

Second, Plaintiff sufficiently alleges receiving a prerecorded and autodialed call. Regarding the use of a prerecorded message, Plaintiff plainly alleges that during the call she received from Choice Home Warranty she heard a prerecorded voice message and that to identify the company she engaged the telemarketing

---

[1] *See* ECF No. 1 at ¶ 27.

company. With regard to the use of an autodialer, the Plaintiff alleges both facts and circumstances surrounding the call she received from Choice Home Warranty sufficient to raise a plausible inference that an autodialer was used, including that the call was made with a pre-recorded voice, without consent, and that it was received from a "spoofed" number that was not in service, which has been the subject of many other consumer complaints. A plaintiff alleging use of an autodialer is not expected to know or allege anything more regarding the technical capacity of the equipment used to make the calls, and in fact should be permitted to proceed in discovery regarding the dialing system used even if she allege far less.

Third, Choice Home Warranty asks this Court to part ways with a 2019 Eleventh Circuit Court of Appeals decision, as well as this Court's own 2016 decision and hold that an unsolicited pre-recorded telemarketing call in violation of the TCPA does not establish Article III Standing. This argument should be discarded, as each circuit court of appeal to consider the question has done.

Finally, Choice Home Warranty asks the Court to take its word that no class can possibly be certified in this case because consent, they argue, will be an individual issue. However, a defendant cannot simply allude to a possible consent defense to defeat any possibility of class certification before discovery has commenced. Moreover, this is precisely the type of TCPA case in which consent is a common issue for the class. The call to the Plaintiff and associated calls to

putative class members were "cold call" telemarketing to sell home warranty services that were not based on any prior relationship. Numerous courts have granted class certification in similar TCPA cases, finding that consent is a common issue for the class. *See infra*.

The Court should therefore deny Choice Home Warranty's motion in total.

## I.    BACKGROUND AND FACTS

The Plaintiff has brought this putative class action pursuant to the TCPA, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). Out of every 7,000,000 robocalls, there's only one TCPA lawsuit in federal court. *Compare* Herb Weisbaum, *It's Not Just You—Americans Received 30 Billion Robocalls Last Year*, NBC News (Jan. 17, 2018), https://www.nbcnews.com/business/consumer/it-s-not-just-you-americans-received-30-billion-robocalls-n838406 (30.5 billion robocalls); *with* WebRecon, *WebRecon Stats for Dec 2017 & Year in Review* (last visited Oct. 29, 2018), https://webrecon.com/webrecon-stats-for-dec-2017-year-in-review/ (4,392 TCPA complaints).

Here, the Plaintiff has alleged that Choice Home Warranty made pre-recorded telemarketing calls to Plaintiff and other putative class members without their consent. Because automated dialing campaigns generally place calls to

hundreds of thousands or even millions of potential customers *en masse*, the

Plaintiff brings this action on behalf of a proposed nationwide class of other

persons who received illegal robocalls from or on behalf of the Defendant.

## II.   ARGUMENT

### A.   The Plaintiff Plainly Alleges She Was Contacted Directly by Choice Home Warranty.

The TCPA prohibits any person from "mak[ing] any call (other than a call

made for emergency purposes or made with the prior express consent of the called

party) using any automatic telephone dialing system or an artificial or prerecorded

voice... to any telephone number assigned to a... cellular telephone service." 47

U.S.C. § 227 (b)(1)(A)(iii). Ms. Griffin is pursuing this claim.

The Plaintiff has plainly alleged that Choice Home Warranty directly made

the call at issue with each of the following allegations:

- Plaintiff alleges that CHW Group, Inc. d/b/a Choice Home Warranty ("CHW Group" or "Defendant") made pre-recorded telemarketing calls to Plaintiff and other putative class members without their consent. *See* ECF No. 1 at ¶ 2.

- CHW Group engages in telemarketing into this District, as it did with the Plaintiff. *Id.* at ¶ 6.

- In order to sell these services, CHW Group relies on telemarketing. *Id.* at ¶ 22.

- One of the telemarketing strategies used by Defendant involve the use of automated dialers and prerecorded messages to solicit potential drivers to use CHW Group's services. *Id.* at ¶ 23.

- While such automated technology may save time and money for CHW Group's telemarketing efforts, it violates the privacy rights of the Plaintiff and putative class. *Id.* at ¶ 24.

- CHW Group called Ms. Griffin on her cellular telephone with a pre-recorded message on October 25, 2019. *Id.* at ¶ 27.

- Confirming that CHW Group made the call and was offering their services, "Mello Baker" from Defendant sent Ms. Griffin an e-mail. *Id.* at ¶ 29.

The Plaintiff has clearly alleged that the first and only company identified on these calls was Choice Home Warranty.

The cases cited by Choice Home Warranty do not overcome these plain allegations. First, in *Naiman v. Freedom Forever, LLC*, 2019 WL 1790471, at *3 (N.D. Cal. Apr. 24, 2019), the plaintiff's complaint included both a calling party and the defendant, but asserted that they were all "one single defendant comprising a 'solar energy company'". *Id.* Similarly, in *Childress v. Liberty Mut. Ins. Co.,* No. 1:17-cv-01051, 2018 WL 4684209 (D.N.M. Sept. 28, 2018), the plaintiff, who was *pro se* at the time of filing, alleged that the pre-recorded message indicated that the caller was "Jason" from "Cheap Insurance Experts", as opposed to the Defendant. *Id.* at *2. Here, there is no presence of a third party affirmatively alleged. In *Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251 (M.D. Fla. 2012), the Court granted a motion to dismiss without prejudice, with leave to amend, due to the fact that the plaintiff did not plead his phone number, not because of his inability to identify that it was the defendant calling him. Unlike *Augustin*, here the

5

Plaintiff has detailed the date and interactions between the parties.

Accordingly, Plaintiff sufficiently alleges receiving a TCPA violative call directly from Defendant.

### B.     Plaintiff Sufficiently Plead Facts Supporting the Conclusion that Defendant's Calls Were Made with a Pre-Recorded Voice and/or an ATDS.

The TCPA places prohibitions on the use of an automatic telephone dialing system ("ATDS") **or** an artificial or prerecorded voice. 47 U.S.C. § 227(b)(1)(A) (emphasis added).

First, the Amended Complaint clearly alleges that Ms. Griffin received a pre-recorded voice call on October 25, 2019. *See* ECF No. 1 at ¶ 27. Ms. Griffin answered the call and heard a pre-recorded voice. *Id*. Ms. Griffin then responded to the message received information from Choice Home Warranty in order to sufficiently identify the company making the call. *Id*. at ¶¶ 28-29. The Plaintiff's complaint requires no more information to prevail on Choice Home Warranty's motion to dismiss.

Second, to state a claim under the Telephone Consumer Protection Act's autodialer provision, 47 U.S.C. § 227(b)(1)(A), a plaintiff must plausibly allege, among other things, that he was called on his cellular telephone number using an autodialer. At this stage of the proceedings, a TCPA plaintiff sufficiently alleges that calls were made using an autodialer by identifying "circumstances

surrounding" the calls that "create a plausible inference of autodialing," including: their "commercial" content; that multiple calls were made to the same recipient; and that she were made without the recipient's consent. *See Keim v. ADF Midatlantic, LLC*, No. 12-80577-CIV, 2015 U.S. Dist. LEXIS 159070, at *12 (S.D. Fla. Nov. 9, 2015) ("Together, these allegations are more than sufficient to plead the autodialer element of Keim's TCPA claim."); *see also Scott v. 360 Mortg. Grp., LLC*, No. 17-cv-61055, 2017 U.S. Dist. LEXIS 207513, at *17 (S.D. Fla. Dec. 14, 2017) ("Plaintiff alleging the use of a particular type of equipment under the TCPA are generally required to rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages, to raise an inference that an automated dialer was utilized. Prior to the initiation of discovery, courts cannot expect more."); *Smith v. Royal Bahamas Cruise Line*, No. 14-cv-03462, 2016 U.S. Dist. LEXIS 6204, at *10-12 (N.D. Ill. Jan. 20, 2016) (finding that several calls to the same recipient supports the inference that the defendant used an autodialer); *Zeidel v. Nat'l Gas & Elec., Ltd. Liab. Co.*, No. 18 CV 06792, 2019 U.S. Dist. LEXIS 83988, at *7 (N.D. Ill. May 17, 2019) (listing factors that can suggest the use of an ATDS, including use of "spoofed" numbers and generic, promotional content of the call).

This is because "it is unreasonable to require a plaintiff in a TCPA complaint, without the benefit of discovery, to elaborate on the specific technical

details of a defendant's alleged ATDS ...." *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 U.S. Dist. LEXIS 178558, at *10-11 (N.D. Ill. Dec. 18, 2012). But "[i]t is not unreasonable, however, to require a plaintiff to describe the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were ... delivered via the ATDS." *Id*. at *11. "This approach does not burden Plaintiff unduly by requiring pleading of technical details impossible to uncover without discovery ...." *Id*.

The Plaintiff's complaint makes the following allegations that support the inference that an ATDS was used to make the call:

•   The equipment used to call Plaintiff and others not only had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, but was programmed to sequentially or randomly access stored telephone numbers to automatically call such numbers for the calls that are the subject of this case. *See* ECF No. 1 at ¶ 31.

•   The equipment generated, and then stored, a sequence of telephone numbers for calling, and then automatically called those numbers. *See* ECF No. 1 at ¶ 32.

•   The calls were part of a campaign that made numerous phone calls in a short period of time without human intervention. *See* ECF No. 1 at ¶ 33.

•   The use of a pre-recorded message is further evidence of that. *See* ECF No. 1 at ¶ 34.

•   In fact, it would be illogical to hand dial a telemarketing call only to use a pre-recorded message. *See* ECF No. 1 at ¶ 35.

•   The caller identification number used to make the call was (234) 208-4547. Call recipients have identified that caller identification number as unwanted spam, including over 340 times using the application "Robokiller". *See* https://lookup.robokiller.com/p/234-208-4547. (Last Visited Nov. 13, 2019). The

application NomoRobo, winner of the FTC's contest related to tracking and stopping unwanted calls, also has reported calls from that number as unwanted solicitations. *See* https://www.nomorobo.com/lookup/234-208-4547. (Last Visited Nov. 13, 2019). *See* ECF No. 1 at ¶ 36-37.

The Complaint alleges at least six different facts supporting the conclusion at this stage of the litigation that Choice Home Warranty used an autodialer to make the unsolicited call. Therefore, Plaintiff "meet[s] his 'obligation to provide the grounds of his entitlement to relief and provide sufficient notice to Defendant to answer the complaint.'" *Scott*, 2017 U.S. Dist. LEXIS 207513, at *17-18. At the pleading stage, the Plaintiff is not expected to know more about the dialer Choice Home used to call her. *Id.*

### C.   The Plaintiff has Article III Standing to Pursue the Unwanted Pre-Recorded Call to her Cell Phone, as the Eleventh Circuit and this Court has Previously Held.

The Article III requirement that plaintiffs demonstrate standing to sue is meant "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted). The oft-repeated "irreducible constitutional minimum of standing" requires three things: (1) an injury-in-fact that is (2) "fairly traceable" to the defendant and that is (3) likely redressable by judicial disposition. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61.

To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and

"actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U. S. at 560. The

critical question here concerns the requirement that a harm be "concrete," which is

to say it must be "real, and not abstract." *Spokeo*, 126 S. Ct. at 1548 (citations

omitted). While the harm must be concrete, it need not be significant – a mere

"trifle" will do. *See, e.g.*, *United States v. Students Challenging Regulatory Agency*

*Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973). A harm is fairly traceable to

the actions of the defendant if there is "a causal connection between the injury and

the [defendant's] conduct" and not because of the independent actions of a third

party. *Lujan*, 126 S. Ct. at 560.

Finally, while Congress cannot convert a generalized grievance into a

particular injury nor confer Article III jurisdiction on courts to issue advisory

opinions, it can nevertheless "enact statutes creating legal rights, the invasion of

which creates standing, even though no injury would exist without the statute."

*IMHOFF Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015) (*quoting*

*Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973).

Every court of appeals to address the question post-*Spokeo* has found that

the TCPA elevated harms to legally cognizable injuries such that Article III

standing is established if Plaintiffs allege a statutory violation of a procedure

designed to protect against the harm the statute was designed to prevent. *See*

*Susinno v. Work Out World Inc.,* 862 F.3d 346 (3d Cir. 2017) (finding Article III

standing established based on receipt of a prerecorded call because "[w]hen one sues under a statute alleging the very injury [the statute] is intended to prevent, and the injury has a close relationship to a harm . . . traditionally . . . providing a basis for a lawsuit in English or American courts, a concrete injury has been pleaded) (quotations omitted); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 958 (8th Cir. 2019) (clarifying post-*Spokeo* that receipt of short, prerecorded voicemail remained a concrete injury); *Leyse v. Lifetime Entm't Servs.*, LLC, 679 Fed. Appx. 44, 46 (2nd Cir. 2017) (same); *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (holding that the receipt of two unsolicited text messages constituted an injury in fact); *see Parchman v. SLM Corp.*, 896 F.3d 728, 738-39 (6th Cir. 2018) ("[T]he primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls. The Congressional findings focus on exactly these kinds of individual wrongs.").

Moreover, among trial courts, "[t]he majority of cases have recognized a concrete injury-in-fact when a plaintiff alleges an invasion of privacy (and/or minimal costs), such that Article III standing exists." *Hamza v. Dunhams Athleisure Corp.*, No. 2:16-cv-11641, 2017 U.S. Dist. LEXIS 41074, at *11 (E.D. Mich. Mar. 22, 2017).  This is because, as *Sussino* put it, "Congress was not inventing a new theory of injury when it enacted the TCPA" but instead "elevated

a harm that, while 'previously inadequate in law,' was of the same character of previously existing 'legally cognizable injuries.'" 862 F.3d at 352 (citing *Spokeo*, 126 S. Ct. at 1549).

Choice Home Warranty claims that the Eleventh Circuit eliminated the private right of action for the TCPA where the allegation is the mere receipt of a single automated phone call. Not so, and as the Eleventh Circuit made clear in *Cordoba v. DIRECTV, LLC* at the end of last year and *after* the *Salcedo* case relied on by Choice Home:

> In <u>Salcedo</u>, we focused heavily on the unique features of text messages. Receiving a text message does not occupy the device for any period of time, ***unlike a fax or a phone call***…In fact, our Court expressly distinguished receiving a text message from receiving an unwanted phone call…Compared to a phone's ring, "[t]he chirp, buzz, or blink of a cell phone receiving a single text message is more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face." <u>Id.</u> As we recognized in <u>Salcedo</u>, a phone call intrudes upon the seclusion of the home, fully occupies the recipient's device for a period of time, and demands the recipient's immediate attention. While those injuries might not be significant in the grand scheme of things, they are sufficiently concrete and particularized for Article III standing.

942 F.3d 1259, 1270 (11th Cir. 2019) (emphasis added). This Court arrived at an identical conclusion in 2016 when considering the same issue, citing to the Congressional history in passing the TCPA:

> As with unsolicited faxes, Congress passed the TCPA to remedy intrinsic harms associated with unsolicited calls:

Once a [*7] phone connection is made, automatic dialing systems can "seize" a recipient's telephone line and not release it until the prerecorded message is played, even when the called party hangs up. This capability makes these systems not only intrusive, but, in an emergency, potentially dangerous as well. Despite these limitations—and the negative public image associated with these systems and the companies that use them—ADRMP use has not declined substantially. The Committee record also includes examples of this technology being employed in conjunction with 900 number schemes.

H.R. REP. 102-317 at 10 (1991). To establish standing, Plaintiff need only allege that its cellular telephone line was occupied by an unsolicited call in violation of the TCPA.

*Abante Rooter & Plumbing, Inc. v. Birch Communs., Inc.,* No. 1:15-cv-3562-AT, 2016 U.S. Dist. LEXIS 8526, at *6-7 (N.D. Ga. Jan. 7, 2016). The Plaintiff has made such an allegation here and Choice Home Warranty's motion should be denied.

### D. The Defendant has Failed to meet the Standard on its Pre-Discovery Motion to Strike Class Allegations.

In moving to strike class allegations, a defendant "ha[s] the burden of demonstrating from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Romano v. Motorola, Inc.*, 2007 U.S. Dist. LEXIS 86472, * 7 (S.D. Fla. November 26, 2007), quoting *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991). This is because defendants are asking the court to "preemptively terminate the class aspects of this litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the

13

discovery for which they would otherwise be entitled on questions relevant to class certification." *Id*.

The 11th Circuit has cautioned that "pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008) (reversing district court's striking of class allegations, explaining that "the district court's conclusion as to the predominance issue at the complaint stage was speculative at best and premature at least"). The Eleventh Circuit reiterated the high standard and limited circumstances under which it is appropriate to strike class allegations at the pleading stage in *Herrera v. JFK Med. Ctr., Ltd. P'ship*, 648 F. App'x 930, 934 (11th Cir. 2016):

> The Supreme Court has emphasized that class certification is an evidentiary issue, and "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) (internal quotation marks omitted). In fact, "the determination usually should be predicated on more information than the complaint itself affords. The court may, and often does, permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or essential." *Huff v. N.D. Cass Co. of Ala.*, 485 F.2d 710, 713 (5th Cir. 1973) (en banc) (internal citation and footnote omitted). After all, "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2552, 180 L. Ed. 2d 374 (2011) (internal quotation marks omitted).

*Id.* Accordingly, motions to strike class allegations are rarely granted prior to briefing on class certification "due to the prematurity of such motions." *Burke v. Credit One Bank, N.A.*, No. 8:18-cv-00728, 2019 U.S. Dist. LEXIS 62770, *6 (M.D. Fla. Feb. 5, 2019) (collecting cases); *Etzel v. Hooters of Am.*, LLC, 223 F. Supp. 3d 1306, 1314 (N.D. Ga. Nov. 15, 2016) ("striking Plaintiff's class allegations would not be appropriate at this time because the class certification issue cannot be readily resolved by the complaint alone"); *Daniel v. Navient Solutions, LLC*, 328 F. Supp. 3d 1319, 1323 (M.D. Fla. 2018) ("an order on class certification is premature prior to discovery and the parties having an opportunity to thoroughly brief the Rule 23 requirements"); *Giordano v. Davison Design & Dev., Inc.*, No. 0:13-cv-60248, 2013 U.S. Dist. LEXIS 203099, * 14 (S.D. Fla. July 18, 2013) ("The arguments raised in Defendant's motion to strike class allegations are better suited for a response to a formal motion for class certification, if and when one is filed."); *Wijesinha v. S. Fla. MGS, LLC*, 387 F. Supp. 3d 1412, 1415-16 (S.D. Fla. June 4, 2019) ("The Court will address arguments regarding the appropriateness of the class definition at the class certification stage.")

Finally, even if Choice Home Warranty establishes that the precise class proposed in the complaint could not possibly be certified (they cannot), the "more appropriate remedy for curing Plaintiff's class definition—if it proves necessary— will be to require Plaintiff to amend the definition at the class certification stage."

*Soular v. Northern Tier Energy LP*, 2015 U.S. Dist. LEXIS 112294, *23 (D. Minn. August 25, 2015); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (problems with class definitions "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis."); *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 540 (E.D. Mich. Apr. 20, 2015) ("when impermissible class allegations are stricken at this early stage in the litigation, plaintiffs should be given leave to amend their complaint to proceed with their allegations"); *see also Prado-Steiman v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000) ("Rule 23(c)(1) specifically empowers district courts to alter or amend class certification orders at *any* time prior to a decision on the merits. That power is critical, because the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims").

In support of their sweeping conclusion that certification is impossible, Choice Home Warranty cites several class certification decisions addressing the affirmative defense of prior express consent. First, this argument ignores Plaintiff's allegations regarding Defendant's actions that apply to all class members, including, most importantly, the cold-calling nature of the campaign and the specific allegations that the class members *did not consent* to receive the calls. The cases cited by Defendant are inapplicable to the facts alleged in and current

16

procedural posture of this case. Indeed, many of the cases cited by the Defendant came *after* discovery and when a motion for class certification was supported and filed. If Choice Home Warranty carries their burden that the calls were made with prior express written consent, something that the Plaintiff's Complaint specifically avers to the contrary, such arguments can be appropriately addressed at the class certification stage.

Another court recently facing a substantively identical argument denied such a motion in a TCPA case that, unlike here, involved a TCPA claim as to which consent was a valid defense:

> Defendant argues that the class definitions are facially uncertifiable because the complaint fails to allege acts that apply generally to the class and therefore, common issues of fact cannot predominate. Defendant contends that the individual issues predominate across the putative classes because Plaintiffs base their class definitions on issues of consent that will vary between class members. But this argument is premature…
>
> The district judge to whom this case is assigned has previously stated that dismissal of class allegations at the pleading stage is "extreme" and "is only available where the face of the pleadings reveal that class certification will be impossible." Sullivan v. Gov't Employees Ins. Co., 6:17-cv-1755-Orl-40KRS, 2018 U.S. Dist. LEXIS 219633, 2018 WL 4759905, at *2 (M.D. Fla. Aug. 1, 2018) (citing Lawson v. Life of the S. Ins. Co., 286 F.R.D. 689, 695 (M.D. Ga. 2012). See also Romano v. Motorola, Inc., No. 07-civ-60517, 2007 U.S. Dist. LEXIS 86472, 2017 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007). The motion is also **DENIED** because Defendant has not met this high standard.

*Wright v. EXP Realty, LLC*, No. 6:18-cv-1851-Orl-40TBS, 2019 U.S. Dist. LEXIS

99003, at *5-7 (M.D. Fla. June 13, 2019).

Moreover, the facts alleged here show that this is precisely the type of TCPA case where consent is found to be a common issue for the class. The calls did not arise out of varied interactions and relationships between Defendant and the called parties. Instead, the purpose of the calls was to sell Choice Home Warranty services. Numerous courts have granted class certification in similar TCPA cases, finding that consent is a common issue for the class. *See e.g., Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 332 (W.D. Okla. Oct. 15, 2018) ("consent may be a common question in cases, such as this one, in which evidence shows defendants had no prior relationship with class members and that defendants purchased their telephone numbers from a third party."); *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 169 (S.D. Cal. March 27, 2019); *Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. Apr. 7, 2008) ("Common questions include . . . whether the inclusion of recipients' fax numbers on the 'leads' list establishes consent to receive the faxes")

Ultimately, if Defendant's argument was adopted, no Telephone Consumer Protection Act, 47 U.S.C. § 227, action could be certified so long as the defendant vaguely alluded to a possible consent defense at the start of the litigation. But this is simply not the case — "Class certification is normal in litigation under [the TCPA], because the main questions … are common to all recipients." *Ira*

18

*Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *see also*

*Chapman v. Wagener Equities, Inc.*, No. 09-c-07299, 2014 WL 540250, at \*15, n.

11 (N.D. Ill. 2014) ("*Chapman I*"), *leave to appeal denied* 747 F.3d 489 (7th Cir.

2014) ("*Chapman II*") (Posner, J.) (discussing "the many cases decided during and

since 2011 in which TCPA classes have been certified[.])

## III.   CONCLUSION

Plaintiff sufficiently states her TCPA claim and clearly articulates the class

of individuals that she seeks to represent. The Court should therefore deny Choice

Home Warranty's motion.

Dated: January 15, 2020

Respectfully submitted,

/s/ *Anthony I. Paronich*
Anthony I. Paronich (*pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
508.221.1510
E-mail: anthony@paronichlaw.com

Steven H. Koval
Attorney for Plaintiff
Georgia Bar No. 428905
THE KOVAL FIRM, LLC
3575 Piedmont Road
15 Piedmont Center, Suite 120
Atlanta, GA 30305
Telephone: (404) 513-6651
Facsimile: (404) 549-4654
Steve@KovalFirm.com

## CERTIFICATION OF COUNSEL

I hereby certify in accordance with U.S.D.C. N.D. Ga. Local Rule 7.1D that the foregoing has been prepared using Times New Roman, 14-point font, as required in U.S.D.C. N.D. Ga. Local Rule 5.1C.

*/s/ Anthony I. Paronich*
Anthony I. Paronich

## CERTIFICATE OF SERVICE

I, hereby certify that on January 15, 2020 I caused the foregoing to be filed via the Court's CM/ECF filing system, which will effect service on all counsel of record.

*/s/ Anthony I. Paronich*
Anthony I. Paronich